**In re QUINTUS CORPORATION, et al., Debtors.**

**Kurt F. Gwynne, Chapter 11 Trustee for the Estate of Quintus Corporation, Plaintiff,**

v.

**Credit Suisse First Boston (USA), Inc. f/k/a Donaldson, Lufkin & Jenrette Securities Corporation, Defendant.**

**Bankruptcy No. 01–0501 (MFW). Adversary No. 05–50066 (MFW).**

United States Bankruptcy Court, D. Delaware.

Oct. 13, 2005.

Pauline K. Morgan, Esquire, Sean M. Beach, Esquire, Young, Conway, Stargatt & Taylor, LLP, Wilmington, DE, Daniel J. Kramer, Esquire, Samuel E. Bonderoff, Esquire, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, Counsel for Credit Suisse First Boston f/k/a Donaldson, Lufkin & Jenrette Securities Corporation.

Kurt F. Gwynne, Esquire, Reed Smith LLP, Wilmington, DE, Henry F. Reichner, Esquire, Valerie N. Brand, Esquire, Reed Smith LLP, Philadelphia, PA, Chapter 11 Trustee for the Estate of Quintus Corporation.

---

**MEMORANDUM OPINION** [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion of the Defendant, Credit Suisse First Boston (USA), Inc., f/k/a Donaldson, Lufkin & Jenrette Securities Corporation ("DLJ") to Dismiss the Complaint filed by the chapter 11 trustee (the "Trustee"). For the reasons set forth below, the Court will deny the Motion.

## I. BACKGROUND

■ Quintus Corporation ("Quintus") was a company that provided e-commerce software and services. In November 1999, Quintus, retained DLJ as lead underwriter for its initial public offering ("IPO"). In an IPO, an underwriting syndicate purchases all the securities from the issuer and then markets and resells the securities to investors, profiting from the spread between the price at which it acquires the securities and the price at which it sells the securities.

At the time of the IPO, DLJ beneficially owned 43.4% of Quintus' stock through a series of affiliates: Sprout Capital VI, Sprout Capital VII, Sprout CEO and DLJ Capital. As a result, Quintus was required to retain Dain Rauscher Wessels ("DRW") to recommend the price at which the stock would be sold by Quintus to the underwriting syndicate. The IPO price was set at $18.00 per share. On the first day of trading (November 16, 1999), Quintus' stock closed at $55.00 per share. In the following five weeks of trading, the price never fell below $45.00 per share.

Subsequently, Quintus filed a chapter 11 petition on February 22, 2001. On January 14, 2005, the Trustee filed a complaint

---

**1.** This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

(the "Complaint") against DLJ alleging that it had caused the stock issued in the IPO to be underpriced. On February 14, 2005, DLJ filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The matter has been fully briefed and is ripe for decision.[2]

## II. JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b).

## III. DISCUSSION

### A. Standard of Review

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure,[3] the Court must accept all well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1420 (3d Cir.1997). A court is not, however, required to credit "bald assertions" or "legal conclusions." *Id.* at 1429. The issue is whether the plaintiff should be entitled to present evidence in support of his claims, not whether he will ultimately prevail on the merits. *In re Rockefeller Center Props., Inc. Secs. Litig.*, 311 F.3d 198, 215 (3d Cir.2002). Therefore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Under Rule 12(b)(6), if "matters outside the pleading are presented to and not ex-

cluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." The Court may, however, consider exhibits attached to a complaint, if they support a claim, or attached to a motion to dismiss, if it is an undisputedly authentic document on which the plaintiff's claim is based. *Rossman v. Fleet Bank (R.I.) Nat'l Ass'n*, 280 F.3d 384, 388 n. 4 (3d Cir.2002). Therefore, in this case the Court considered the Conduct Rules of the National Association of Securities Dealers, Inc. (the "NASD Conduct Rules"), the Underwriting Agreement and the Prospectus, because they are the documents on which the plaintiff's claim is based.

### B. Allegations of Complaint

The Trustee's Complaint against DLJ contains claims for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, breach of contract, fraud and fraudulent concealment, negligence, and unjust enrichment. The premise of the Trustee's Complaint is that DLJ caused the stock issued in the IPO to be underpriced. The Trustee also alleges that DLJ allocated the underpriced shares to favored clients who, in exchange, shared part of their profits with DLJ pursuant to side agreements. As a result of these actions, Quintus alleges it was deprived of millions of dollars of potential proceeds from its IPO while DLJ was excessively compensated.

#### 1. Determining the IPO Price

■ DLJ moves to dismiss the Complaint on the ground that it had no role in

---

**2.** After the notice of completion of briefing, the parties submitted supplemental briefing with respect to a recent decision that the Trustee argues is relevant to the issue at bar. Although the Court considered these briefs, the case cited was not relevant to the decision to deny the motion to dismiss.

**3.** Rule 7012(b) of the Federal Rules of Bankruptcy Procedure makes Rule 12(b)(6) of the Federal Rules of Civil Procedure applicable to adversary proceedings.

determining the price for the IPO shares. Because DLJ beneficially owned more than 40% of the stock in Quintus, the IPO was subject to special rules to protect the investing public. The NASD Conduct Rules require that a Qualified Independent Underwriter ("QIU") participate in the public offering and set the maximum price for the IPO securities when a member of the underwriting syndicate beneficially owns 10% or more of the offering company's stock. Quintus complied with this Conduct Rule by hiring DRW as the QIU to set the stock price.

DLJ asserts that this is confirmed by the relevant documents. The Underwriting Agreement provides that DRW would fix the maximum price:

> The Company hereby confirms its engagement of Dain Ruscher Wessels ("DRW") as, and DRW hereby confirms its agreement with the Company to render services as, a "qualified independent underwriter", within the meaning of Section (b)(15) of Rule 2720 of the Conduct Rules of the National Association of Securities Dealers, Inc. with respect to the offering and sale of the Shares .... *The price at which the Shares will be sold to the public shall not be higher than the maximum price recommended by the QIU.*

(emphasis added).

The Prospectus confirms this:

> Because the Sprout Entities affiliated with Donaldson, Lufkin & Jenrette Securities Corporation beneficially own more than 10% of the outstanding common stock, this offering is being conducted in accordance with Rule 2720 of the Conduct Rules of the National Associate [sic] of Securities Dealers, Inc., which provides that the public offering price of an equity security be no higher than that recommended by a "qualified independent underwriter" meeting cer-

tain standards. In accordance with this requirement, *Dain Rauscher Wessels, a division of Dain Rauscher Incorporated, assumed the responsibilities of action as qualified independent underwriter and recommended a price in compliance with the requirements of Rule 2720.*

(emphasis added).

Because Quintus hired DRW as the QIU to set the price for its IPO, DLJ asserts that the Complaint (which is premised on the allegation that DLJ was responsible for setting the price) must be dismissed. Specifically, DLJ claims that the Trustee has pled no facts to support its assertion that DLJ influenced the price, but instead relies on "conclusions" and "vague assertions" which are contradicted by the Prospectus, the Underwriting Agreement, and the NASD Conduct Rules. Furthermore, DLJ contends that the Trustee has not alleged any facts in support of its theory that DLJ somehow influenced the pricing. Rather, the Trustee simply claims it has "reason to believe" that DLJ as the lead underwriter had a significant input into the QIU recommendation and was the ultimate authority with respect to pricing the stock. Consequently, DLJ argues that the Trustee has not met its pleading burden.

In response, the Trustee contends that, despite the presence of DRW, DLJ still influenced the selling price. The Complaint alleges that "DLJ had control and influence over the pricing of the Quintus shares" and that "DLJ made material representations of fact regarding the appropriate pricing for Quintus stock for purposes of its IPO." The Trustee asserts that he has pled with sufficient specificity that DLJ controlled the selling price. Although acknowledging that DRW was hired, the Trustee maintains that there is a question of fact as to whether DRW or DLJ actually set the price for the IPO shares.

**114**

■ The Court agrees with the Trustee. Under Rule 8(a) of the Federal Rules of Civil Procedure,[4] a claimant is not required to establish in detail the facts supporting its claim. "All [Rule 8(a)] require[s] is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99. The Court concludes that the Trustee has satisfied this pleading requirement.

### 2. *Side Agreements*

■ In addition, the Trustee alleges in the Complaint that DLJ misrepresented its compensation in violation of Rule 2710 of the NASD Conduct Rules.[5] Specifically, the Trustee asserts in the Complaint that "DLJ allocated underpriced Quintus IPO shares to its favored clients who, in exchange, directly or indirectly shared portions of their profits therefrom with DLJ pursuant to side agreements or understandings." DLJ's defense that DRW priced the shares is irrelevant to this claim, according to the Trustee.

DLJ maintains that this allegation must also be dismissed because, in the Complaint's own words, that claim is "inextricably linked" to the underpricing of the IPO shares. The Complaint also states that DLJ's allocation practices were "only possible because the initial IPO shares were underpriced." Therefore, DLJ asserts that, because it did not determine the price of the shares, this count of the Complaint should also be dismissed.

4. Rule 7008(a) of the Federal Rules of Bankruptcy Procedure makes Rule 8(a) of the Federal Rules of Civil Procedure applicable to adversary proceedings.

5. Rule 2710 of the NASD Conduct Rules provides:

As stated above, when reviewing a motion to dismiss, a court is "required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *In re Rockefeller Center Props.,* 311 F.3d at 215. In light of this standard, the Court concludes that the Trustee has sufficiently pled its claims. The Trustee asserts that although the documents state that DRW was assigned responsibility for setting the maximum price of the IPO shares, DLJ influenced the price that was finally selected. If this is true, the Trustee may be entitled to relief.

Even if DLJ did not set the price, however, the Trustee alleges that DLJ had side agreements that violated the NASD Conduct Rules. While DLJ contends that the Trustee has not presented enough facts to support this charge, more evidence is not required at this stage in the proceeding. In the context of this Motion, the Court must accept the allegations as true and allow the Trustee an opportunity to present evidence in support of its claim. Because there is a set of facts that the Trustee could prove that would support his claim and entitle him to relief, DLJ's Motion to Dismiss must be denied as to this count as well.

### IV. CONCLUSION

For the reasons stated above, the Court will deny the Defendant's Motion to Dismiss.

For purposes of determining the amount of underwriting compensation, all items of value received or to be received from *any source* by the underwriter and related persons which are deemed to be in connection with or related to the distribution of the public offering ... shall be *disclosed.*
(Emphasis added.)